IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

**UNITED STATES OF AMERICA**

v.  CRIMINAL NO. 1:17-00195

**WINDEL LESTER**
**JAMES EDWARD LESTER**
**GEORGETTA KENNEY**
**GREG A. LESTER**
**JAMES KEITH BROWNING**

## MEMORANDUM OPINION AND ORDER

Before the court are a number of pretrial motions all heard at the second pretrial motions hearing on July 12, 2018. ECF Nos. 94, 181, 200-02, 205-06, 208, 227, 237, 241-44.

### I. COURT'S FINDINGS AT SECOND PRETRIAL MOTIONS HEARING

For the reasons placed on the record at the hearing, the court hereby **ORDERED** as follows:

1) Greg Lester's Pretrial Motions are **DENIED** as moot. ECF No. 94.

2) James Lester's Motion to Suppress Rule 404(b) Evidence,(ECF No. 181), is **DENIED in part**. First, the motion sought to restrict evidence of 1) 34 cashier's checks received as insurance proceeds from the Wharncliffe fire, 26 of which were exactly $10,000; and 2) cash deposits of $9,000 and $6,800 on October 3 and 4, 2012, respectively. At the hearing, the court **DENIED** this motion because the proposed 404(b) evidence demonstrated James Lester's intent and lack of mistake when seeking to evade currency transaction reports, as James Lester is charged in Count 25 of the Second Superseding Indictment. Additionally, the court **DENIED**

as moot James Lester's request to prohibit evidence of a truck fire, because the government stated that it will not introduce this evidence at trial. Finally, the court reserved ruling upon James Lester's motion to suppress the Wharncliffe fire which the court considers below.

3) United States' Motion in Limine Regarding Defendants' Self-Serving Out-of-Court Statements is **DEFERRED** until trial. ECF No. 200.

4) United States' Motion in Limine Regarding Impeachment of Government Witnesses is **DEFERRED** until trial to allow the court to consider the admissibility of specific impeachment evidence in light of Federal Rules of Evidence Rule 609. ECF No. 201.

5) United States' Motion in Limine to Preclude Improper Character Evidence is **DEFERRED** until trial. ECF No. 202.

6) Windel Lester's Motion to Exclude Testimony or Evidence of Any Type on the Purchase Price of Homes/Insurance Payouts is **DENIED**. ECF No. 206.

7) Georgetta Kenney's Motion in Limine Regarding Irrelevant or Unduly Prejudicial Evidence is **GRANTED**. ECF No. 208. While the court is aware that same-sex marriage is legal throughout the United States, the court believes that the relevance of the evidence at issue – that the Huntington property was set on fire, in part, for the purpose of placing a mobile home on the property for Christina Cox – is significantly outweighed by the risk of unfair prejudice arising from introducing Georgetta Kenney's same-sex, extramarital relationship with Ms. Cox, who worked as an exotic dancer. Moreover, this danger of unfair prejudice extends to Windel Lester through his apparent consent and financial affirmation of the affair. See Fed. R. Evid. 403.

8) James Lester's Motion to Suppress Statements as to James Edward Lester is **DENIED**, because instead of "clearly request[ing] an attorney," Davis v. United States, 512 U.S. 452, 461 (1994), James Lester knowingly, intelligently, and voluntarily asserted his desire to

proceed with the post-arrest interview without legal counsel.  ECF No. 237.[1]

9) Georgetta Kenney's Motion in Limine to Preclude Opinions by Lay Witnesses Relating to Defendant Kenney's Knowledge or Intent is **DENIED** as moot.  ECF No. 242.

10) Windel Lester's Motion in Limine to Preclude Alleged Statement is **DENIED** because the statement is not hearsay, but an opposing party statement.  ECF No. 243.

## II.   MOTIONS WHICH COURT RESERVED JUDGMENT

After hearing arguments, the court reserved its judgment on several motions.  ECF Nos. 181, 205, 241, 243.  With time to consider each issue more fully, the court **FINDS** as follows.

### A. The Court Finds That the Government's Proposed Lay Witness Testimony of Dudley Bledsoe and Ricky Gleason Is Admissible Under Federal Rules of Evidence Rule 701

In response to Georgetta Kenney's motion to preclude lay witness testimony related to her knowledge or intent, (ECF No. 242), the government indicated that unindicted co-conspirators, Dudley Bledsoe and Ricky Gleason will offer lay witness testimony.

Dudley Bledsoe will testify that Kenney was present during financial transactions surrounding the Matoaka Fire.  Kenney

---

[1] After the court's denial, counsel for James Lester requested that the entire post-arrest interview be played for the jury. The government objected that this request did not accord with Federal Rule of Evidence 106.  The court **DEFERRED** judgment on this motion and now requests that counsel for James Lester file a motion providing context to the court as to why the entire interview (or specific statements within the interview) is admissible under Federal Rules of Evidence Rule 106.

3

wrote a check for $38,000 payable to Bledsoe from her joint bank account with Windel Lester at Pioneer Community Bank. Bled used this check to purchase the Matoaka property in his own name. ECF No. 250 at p.2. In January 2013, a month after the Matoaka fire, Bledsoe obtained a fraudulent receipt for $13,249.96 in household goods from Lester Home Center dated October 2, 2012. Kenney prepared and initialed this receipt. Moreover, Bledsoe sent documents related to the insurance claim to Liberty Mutual Insurance Company on a fax machine at Lester Home Center. Bledsoe will testify that Kenney was present when he sent some of these faxes. Finally, after Bledsoe's receipt of a $68,719.93 insurance check from Liberty Mutual, Kenney cashed this check for Bledsoe using Lester Home Center money and deposited the check in her Pioneer Bank account.

Ricky Gleason is anticipated to testify that Kenney was also aware of the Huntington fire scheme. After cashing a check for $13,000 in insurance proceeds from the Huntington fire, Gleason met with Windel Lester and Kenney. Gleason gave $5,000 to Windel Lester to pay the arsonist. The remaining $8,000 was divided between Gleason and Windel Lester. Gleason also transferred ownership of the Huntington property into Windel Lester's name. Gleason will testify that this entire exchange occurred openly in Kenney's presence. ECF No. 250 at p.3.

Federal Rules of Evidence Rule 701 authorizes the court to admit lay opinion testimony if it is: "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Rule 701,

> [R]eject[s] the impractical notion that lay persons be required to testify only to pure facts when relating their knowledge of an incident, the rule allows testimony based on the person's reasoning and opinions about witnessed events, such as are familiar in every day life. . . . [Instead,] [t]he important limitations are (1) that the opinion testimony be based on the witness' actual perception of events and (2) that it be helpful to the jury in understanding those events.

United States v. Offill, 666 F.3d 168, 177 (4th Cir. 2011).

First, the anticipated testimony of Bledsoe and Gleason is based upon their first-hand perceptions of Kenney's actions and her apparent awareness of the alleged scheme. United States v. Perkins, 470 F.3d 150, 155–56 (4th Cir. 2006) ("lay opinion testimony must be based on personal knowledge."). Second, the testimony of both witnesses would be helpful to the jury in considering whether Kenney knowingly participated in the conspiracy. Offill, 666 F.3d at 178 (4th Cir. 2011) (lay witness's testimony relevant if it would shed light on "the nature and purpose of the conspiracy and [defendant's] interaction with [lay witness] in furthering its illegal

5

aims."). Accordingly, the court **DENIES** defendant's motion.[2]  ECF No. 242.

### B. The Court DENIES Defendants' Motions to Suppress the Wharncliffe Fire

Of many fires "related" to defendants,[3] the government has communicated that it only intends to introduce evidence of a July 2010 fire which occurred on James Lester's property in Wharncliffe, West Virginia ("Wharncliffe fire").  Both James Lester and Windel Lester argue this evidence is inadmissible under Rule 404(b) of the Federal Rules of Evidence.  See ECF Nos. 181 and 205.  The government responds that the Wharncliffe fire is intrinsic to the conspiracy and therefore is not even Rule 404(b) evidence.  In the alternative, the government argues that evidence of the Wharncliffe fire is admissible under Rule 404(b)(2).

The government alleges that James Lester purchased the Wharncliffe property in May 2010 for approximately $52,000.  See ECF No. 191 at p.4.  On July 4, 2010, the property caught fire, but the fire was successfully halted by the fire department.

---

[2] The court remains mindful that the testimony of Bledsoe and Gleason may not devolve into mere speculation.  See Fed. R. Evid. 701, Advisory Committee's Note.

[3] Windel Lester's motion attempted to restrict evidence of 11 other fires.  See ECF No. 205.  Because the only fire that the government intends to offer evidence about is the Wharncliffe fire, the motion is **DENIED in part** as moot.

6

Id. Two days later, the home caught fire again and burned to the ground. Id. James Lester stated that he was in Myrtle Beach, South Carolina at the time of the fire. Id. at p.5. Later that month, James Lester claimed losses approximating $351,030.00, substantiating his losses with a list of items allegedly lost in the fire ("contents list"). James Lester eventually received insurance checks in the amount of $345,783.00 from Homesite Insurance. Id. at p.4.

The veracity of the Wharncliffe fire contents list is under scrutiny. After the fire, James Lester gave a chest of drawers claimed on the contents list to Dudley Bledsoe, who later provided this piece of furniture to law enforcement. Id. at p.5. Additionally, photos taken after the Wharncliffe fire do not show many large items listed on the contents list, including a heavy welder, tanning bed, and riding lawnmower. Id. Moreover, James Lester has allegedly testified under oath that he "[d]idn't have no lawnmower." Id.

As to the Wharncliffe fire's nexus to this action, the government claims that this fire established a model for the Matoaka (Counts 4-19) and Ikes Fork (34-40) fires. Specifically, James Lester used his previous experience with the Wharncliffe fire to illustrate that setting fire to a home, filing a fraudulent insurance claim, and collecting insurance proceeds could be an easy way to make money. Id. at p.6.

7

James Lester allegedly approached Dudley Bledsoe with the plan to burn the Matoaka property and collect insurance proceeds.  Bledsoe will testify that the contents list from the Wharncliffe fire was used to prepare the Matoaka fire contents list.  A comparison of the lists indicates 93 similar items, including unique items like a horseshoe diamond ring, a tanning bed, an Amish-made swing, and others.  Id. at p.6.

For the Ikes Fork fire, James Lester approached James Browning with a plan to place the property in Browning's name, set fire to the home, and make a fraudulent insurance claim.  Transferring ownership of the property from James Lester to Browning was pivotal towards averting suspicion because both the Ikes Fork and Wharncliffe properties were insured by Homesite Insurance.  The Ikes Fork contents list provided to Homesite Insurance Company reveals 71 common items from the Wharncliffe contents list.  Id.  Similar to the Wharncliffe fire, Browning and Lester had an alibi -- both were out of town at the West Virginia State Fair -- when the fire occurred on August 27, 2013.

The court finds that evidence of the Wharncliffe fire is intrinsic to the conspiracy, and therefore not within the purview of Rule 404(b).  Rule 404(b) applies only to evidence of other acts "extrinsic to the one charged."  United States v. Chin, 83 F.3d 83, 87 (4th Cir. 1996).  However, "acts intrinsic

to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence." Id. at 87–88 (collecting cases). Instead,

> [E]vidence of uncharged conduct is not considered "other crimes" evidence if it "arose out of the same . . . series of transactions as the charged offense, . . . <u>or if it is necessary to complete the story of the crime (on) trial.</u>"

<u>United States v. Kennedy</u>, 32 F.3d 876, 885 (4th Cir. 1994) (emphasis added) (quoting <u>United States v. Towne</u>, 870 F.2d 880, 886 (2d Cir. 1989)). "In other words, the Government may 'provide context relevant to the criminal charges'" without such evidence being labeled Rule 404(b) evidence. <u>United States v. Trout</u>, 369 F. App'x 493 (4th Cir. 2010) (quoting <u>United States v. Cooper</u>, 482 F.3d 658, 663 (4th Cir. 2007)). Without evidence of the Wharncliffe fire, the jury would be left without context as to:

- Why did James Lester believe that setting fire to the Matoaka and Ikes Fork properties could be financially profitable?

- Where the origin of the contents list from the Matoka and Ikes Fork insurance claims arose?

- Why James Lester had to transfer ownership of the Ikes Fork property into Browning's name?

Accordingly, and without regard to whether the fire was criminal in nature, the Wharncliffe fire is fundamental towards "provid[ing] context relevant to the criminal charges" and to

9

allow the jury to fully understand the foundations of the criminal conspiracy as alleged.  Cooper, 482 F.3d at 663; see also Thomas v. United States, No. 3:05-CR-104-FDW-DSC, 2013 WL 4510669, at *4 (W.D.N.C. Aug. 26, 2013) (finding evidence "which laid the foundation for, and told the story of, the charged crime by explaining how [defendant] met [conspirators] and how their . . . relationship began and evolved" was intrinsic to the crime as alleged in the indictment).  Put another way, evidence of the Wharncliffe fire offers the "necessary preliminaries" for the insurance fraud scheme as alleged in this indictment.  Chin, 83 F.3d at 88 (quoting United States v. Lambert, 995 F.2d 1006, 1007 (10th Cir. 1993)); see also United States v. Basham, 561 F.3d 302, 327 (4th Cir. 2009) ("Rule 404(b) does not bar evidence that completes the story of the crime or explains the relationship of parties or the circumstances surrounding a particular event.") (quoting United States v. Edwards, 159 F.3d 1117, 1129 (8th Cir. 1998)).

Counsel for Windel Lester and James Lester argue that the evidence from the Wharncliffe fire is stale.  Nevertheless, since it was not stale for James Lester to encourage Gleason and Browning to join the conspiracy, it is not stale for use by the government at trial.  Moreover, James Lester appears to have followed the playbook from the Wharncliffe fire to divert suspicion in the Matoaka and Ikes Fork schemes.

Next, the court must determine whether evidence of the Wharncliffe fire satisfies the requirements of Rule 403 of the Federal Rules of Evidence. Despite its relevance, evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Counsel for James Lester asserts that evidence of the Wharncliffe fire "could mislead the jury into believing [James Lester] is guilty of the offenses in the indictment simply because of mere proximity to other fires or association with persons who suffered loss from other fires." ECF No. 181 at p.3.[4] The court concludes that a reasonable jury can heed the court's jury instructions and differentiate evidence of each fire. Accordingly, the testimony as represented by the government[5] surrounding the Wharncliffe fire is probative toward

---

[4] Counsel for Windel Lester argued that the cumulative nature of admitting evidence of 12 fires would unfairly prejudice Windel Lester. Nevertheless, evidence of only the Wharncliffe fire, which has no bearing on Windel Lester, makes his argument moot. ECF No. 205 at p.2.

[5] The government's response indicates that "[t]here is reliable evidence, however, that the loss claimed for the Wharncliffe fire was fraudulent, regardless of the cause of the fire." ECF No. 191 at p.8. The court's review of the government's filings has failed to illuminate any evidence that the Wharncliffe fire resulted from criminal activity. Therefore, the court will not

explaining the foundation for the Matoaka and Ikes Fork fires and will not unduly prejudice defendants.[6]

Even assuming the Wharncliffe fire is not intrinsic to the conspiracy, this evidence would fall within Rule 404(b). In short, Rule 404(b) prohibits evidence of "other crimes, wrongs, or acts" solely to prove a defendant's bad character, but permits their introduction when "[s]uch evidence . . . may 'be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" United States v. Basham, 561 F.3d 302, 326 (4th Cir. 2009) (quoting Fed. R. Evid. 404(b)).

> [T]o be admissible under Rule 404(b), the proffered evidence (i) must be relevant to an issue other than character, such as identity or motive, (ii) must be necessary to prove an element of the crime charged, or to prove context; and (iii) must be reliable. In addition, the probative value of the evidence must not be substantially outweighed by its prejudicial effect, which involves a Rule 403 determination.

---

allow the government to make any inference as such, unless the government makes a motion to this effect.

[6] During the pretrial motions hearing, counsel for Windel Lester, Greg Lester, and Georgetta Kenney renewed their motions to sever this matter, arguing that the Wharncliffe fire would unfairly prejudice their respective clients. The court refuses to upset its earlier ruling, believing that proper limiting instructions will allow a competent jury to distinguish James Lester's personal involvement in the Wharncliffe fire with the actions alleged in the conspiracy as to other defendants.

United States v. Byers, 649 F.3d 197, 206 (4th Cir. 2011) (cleaned up).[7]

First, evidence of the Wharncliffe fire is relevant to James Lester's motive, knowledge, and intent to induce Browning and Bledsoe to set fire to and financially profit from the Ikes Fork and Matoaka fires. Additionally, the facts as alleged in the Second Superseding Indictment are "exceedingly similar" to the nature of the Wharncliffe fire, including the contents list and the conspirators' alibis. United States v. Cabrera-Beltran, 660 F.3d 742, 755 (4th Cir. 2011). Second, the Wharncliffe fire is relevant to the government's required showing of fraud for each fire and provides context for why James Lester took certain actions in execution of the Ikes Fork and Matoaka fires. Third, the evidence is reliable because the government has indicated that it will produce documentary evidence (i.e. insurance claims, including the contents list) and testimonial evidence of firefighters who responded to the Wharncliffe fire. Fourth and as stated previously, the court finds that the probative value of evidence of the Wharncliffe fire will not be substantially outweighed by the risk of unfair prejudice.

---

[7] This brief uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from this quotation.

**C. The Court DENIES Windel Lester's Motion in Limine to Preclude Any References to Windel Lester's Silence as an Adoptive Admission**

Greg Lester, Windel Lester, and James Lester were transported with another inmate, Laron Safford on November 21, 2017, from Southern Regional Jail to the United States courthouse in Beckley,[8] for their respective detention hearings. During transportation and while awaiting their hearings, Greg Lester and Windel Lester allegedly made incriminating statements to and in the presence of Safford. Later that day and of his own volition, Safford approached law enforcement regarding this conversation. ECF No. 249-1 at pp 14-15. In Safford's recorded statement, he understood the facts underlying the conspiracy, named co-conspirators, Bill Toler and Ricky Gleason and their alleged roles in the conspiracy, and knew Dudley Bledsoe by his nickname "JJ." Moreover, Safford was aware that the United States Postal Inspection Service and First Sergeant S.E. Wolfe of the West Virginia State Police were involved in bringing the investigation. ECF No. 249-1 at pp. 4-8, 17, 20.

While Safford noted that Greg Lester did most of the talking, Windel apparently contributed to the conversation by stating that he's "not going to roll over on [Pioneer] Bank

---

[8] The court's prior Memorandum Opinion and Order erroneously stated that transportation was to the United States courthouse in Charleston. See ECF No. 233 at p.9.

14

because they've been too good to him." Id. at p.7; see also id. at pp. 4, 8, 17 (same); id. at p.18 (indicating that "Pioneer Bank" was the bank at issue) (emphasis added). Finally, Windel Lester never disclaimed any of the statements made by Greg Lester or asserted his innocence. Id. at pp. 11-13.

While the court ruled at the pretrial motions hearing that Windel Lester's statement that "he's not going to roll on [Pioneer] Bank," was admissible, see supra, the court reserved ruling on whether the statements of Greg Lester could be attributed to Windel Lester as an adoptive admission.

The court already considered the admissibility of Greg Lester's incriminating statements against Windel Lester in the context of a Bruton challenge:

> [T]he government asserts that Windel Lester's silence and own statements constitute an adoptive admission of Greg Lester's statements. The court agrees. A statement made by someone else may be treated as a statement of the party if the party adopts the statement. See Fed. R. Evid. 801(d)(2)(B). "A party may manifest adoption of a statement in any number of ways, including through words, conduct, or silence." United States v. Robinson, 275 F.3d 371, 383 (4th Cir. 2001) (internal alteration omitted).
>
> When a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement.

15

> United States v. Jinadu, 98 F.3d 239, 244 (6th Cir. 1996) (emphasis added) (cited by Robinson, 275 F.3d at 383). The substance and context of Greg Lester's statements indicate Windel Lester heard, understood, and acquiesced to these communications. First, the alleged actions of Windel Lester constitute an adoption by silence due to his failure to allege that James Lester's statements were false. See Robinson, 275 F.3d at 383; see also United States v. Williams, 445 F.3d 724, 735 (4th Cir. 2006) ("If someone says in the defendant's presence that 'this is the money the defendant got when he robbed the bank,' it is logical for the jury to conclude that the defendant would have spoken up if he in fact had not robbed the bank."). Even more clear-cut, Windel Lester allegedly <u>contributed</u> to the conversation by "jump[ing] in and sa[ying]" that he's not going to roll on the Bank," despite pressure from law enforcement to do so. ECF No. 215-2 at p.8.

ECF No. 233 at pp. 11-12.

Upon further review, the court continues to find that Windel Lester should have been induced to proclaim his innocence and that "the jury could infer that [Windel Lester] heard, understood, and acquiesced in the statement[s]" made by Greg Lester. Jinadu, 98 F.3d at 244. Instead, Windel asserted his refusal to provide law enforcement with inculpatory evidence against Pioneer Bank.

Counsel for Windel Lester also argues that these statements cannot be considered adoptive admissions because they occurred after Windel Lester was arrested. In support, his counsel states that he instructed Windel Lester not to speak about the

matter.  ECF No. 244 at p.2.[9]  Therefore, allowing post-arrest adoptive admissions violates Windel Lester's fundamental right to remain silent, and coerces him to proclaim his innocence.

Counsel for defendant fails to provide, nor can the court find, any authority which establishes a post-arrest bar to adoptive admissions by silence.  In contrast, the Fourth Circuit has allowed prosecutors to admit evidence of adoptive admissions during recorded jail calls and when a defendant failed to respond to a cell mate's accusation.  United States v. Higgs, 353 F.3d 281, 310 (4th Cir. 2003); see also United States v. Chiles, 185 F. App'x 301, 304 (4th Cir. 2006) (admitting post-arrest jail call recording); cf. Folston v. Allsbrook, 691 F.2d 184, 187 (4th Cir. 1982) (admitting post-arrest failure to respond to cellmate because "Doyle v. Ohio, 426 U.S. 610 (1976), does not create a per se rule rendering inadmissible any reference to the post-arrest silence of a criminal defendant.").

Instead, the admissibility of an adoptive admission is context-dependent, not timeline-dependent.  See Robinson, 275 F.3d at 383.  Here, the context of this conversation should have

---

[9] It is worth noting that Windel Lester does not seem to have heeded his counsel's advice.  On the same day as this detention hearing, Windel made two telephone calls which acknowledged his involvement in the conspiracy.  See ECF Nos. 253-1; 253-2.

induced Windel Lester to defend his innocence. Instead, he defended his refusal to rat on Pioneer Bank.

### III. GREG LESTER'S MOTION FOR BOND

While the court has not heard arguments on Greg Lester's renewed motion for bond, (ECF No. 227), the court considers the merits of his motion here. After his initial arraignment on November 15, 2017, Greg Lester was released on bond. He then admittedly violated the conditions of his bond by communicating with Windel Lester (who was detained in jail) despite a full awareness that such communication was prohibited. This led Magistrate Judge Aboulhosn to detain Greg Lester on January 16, 2018. ECF No. 169. Nevertheless, during Greg Lester's arraignment on the Second Superseding Indictment, the magistrate judge ordered his release on March 7, 2018, citing a material change in circumstances. The government appealed. After a hearing, this court found that no change of circumstance existed, reversed the magistrate judge, and again detained Greg Lester. ECF No. 178.

Now, Greg Lester files this motion requesting that the court reconsider and allow him to be placed on bond. In support, Greg Lester pens a heartfelt apology explaining his lack of awareness of the gravity of complying with his conditions of release. Further, if given the opportunity, he will "absolutely abide by any and all restrictions that [the

court] see[s] fit to ensure a strict pre-trial release." ECF No. 227-1 at pp. 4-5. The government opposes the motion. ECF No. 230.

Despite the court's belief in the sincerity of defendant's remorse, the court fails to find any change in circumstances that would upset the court's previous finding by clear and convincing evidence that Greg Lester (1) violated a condition of his release and (2) is unlikely to abide by any condition or combination of conditions of release. Moreover, the court continues to find that no material change of circumstances has occurred since Greg Lester was originally detained on January 16, 2018. Accordingly, the court **DENIES** Greg Lester's motion for release.

## IV. CONCLUSION

For the reasons stated at the pretrial motions hearing and this Memorandum Opinion and Order, this court:

**DENIES**:
1) Greg Lester's Pretrial Motions, (ECF No. 94);
2) James Lester's Motion to Suppress Rule 404(b) Evidence, (ECF No. 181);
3) Windel Lester's Motion to Exclude Any Reference to Other Fires, (ECF No. 205);
4) Windel Lester's Motion to Exclude Testimony on Purchase Price of Homes/Insurance Payouts, (ECF No. 206);
5) Greg Lester's Motion for Release on Bond, (ECF No. 227);
6) James Lester's Motion to Suppress Statements, (ECF No. 237);
7) Georgetta Kenney's Motion to Preclude Lay Witness Opinions Relating to Kenney's Knowledge or Intent by

Investigators, Inspectors, and Law Enforcement
   Officers, (ECF No. 241);
8) Georgetta Kenney's Motion Preclude Opinions by Lay
   Witnesses Relating to Defendant Kenney's Knowledge or
   Intent, (ECF No. 242); and
9) Windel Lester's Motion in Limine to Preclude Alleged
   Statement, (ECF No. 243); and
10)   Windel Lester's Motion in Limine to Preclude Any
   References to Windel Lester's Silence as an Adoptive
   Admission, (ECF No. 244).

**DEFERS:**
1) United States' Motion in Limine Regarding Defendants'
   Self-Serving Out-of-Court Statements, (ECF No. 200);
2) United States' Motion in Limine Regarding Impeachment
   of Government Witnesses, (ECF No. 201); and
3) United States' Motion in Limine to Preclude Improper
   Character Evidence, (ECF No. 202).

**GRANTS:**
1) Georgetta Kenney's Motion Regarding Irrelevant or
   Unduly Prejudicial Evidence, (ECF No. 208).


The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record, the United States Marshal for the Southern District of West Virginia and the Probation Office of this Court.

**IT IS SO ORDERED** this 6th day of August 2018.

                ENTER:

                */s/ David A. Faber*
                David A. Faber
                Senior United States District Judge